# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN ILLINOIS

| | |
|---|---|
| CHARLES SHARP ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 06 C 2579 |
| ) | |
| LT. FRANKLIN ) | Judge Ronald A. Guzmán |
| LT. BUCHANAN ) | |
| COLLEEN FRANKLIN ) | |
| SANDRA HAWKINS ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles Sharp, currently an inmate at Western Illinois Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983, in regard to events that allegedly happened at Stateville Correctional Center in 2005.

Defendants Lt. Franklin, Lt. Buchanan, Colleen Franklin, and Sandra Hawkins[1] ("Defendants") have filed a motion for summary judgment claiming that Plaintiff failed to exhaust his administrative remedies before he filed this action. Plaintiff has filed a response, to which Defendants filed a reply. For the following reasons, the Court denies Defendants' motion for summary judgment.

## BACKGROUND FACTS

At issue are three separate incidents and the following facts are taken from Defendants and Plaintiff's Local Rule 56.1 filings.

---

[1] On January 31, 2007, the Court granted defendant Sandra Hawkins's motion for leave to join in co-defendants motion for summary judgment, which had been filed on November 16, 2006.

## A. The May 20, 2005, Grievance

Both Plaintiff and Defendants agree as to the following facts. Plaintiff claims that on April 29, 2005, he was given a ticket for sexual misconduct and later that day defendant Lt. Buchanan assaulted him. On May 20, 2005, he submitted a grievance to his counselor regarding staff misconduct and his claim that Lt. Buchanan "struck [Plaintiff] in the abdomen with a closed right fist, and then struck [Plaintiff] twice in rib area." Defendants' Exhibit C.

On May 23, 2005, Defendant Counselor Colleen Franklin received the grievance and on May 25, 2005, forwarded it to the grievance officer, defendant Sandra Hawkins. *Id.* On May 31, 2005, Hawkins received the grievance, and on September 30, 2005, she denied it. *Id.*

On September 30, 2005, Chief Administrative Officer Dee Battaglia (not a defendant) received the grievance, and on October 4, 2005, she concurred with Hawkins's denial of the grievance. *Id.*

Plaintiff did not sign and date the box titled "Committed Person's Appeal To The Director," located beneath the Chief Administrative Officer's Response at the bottom of the grievance. *Id.*

Plaintiff claims that he did not sign this box because he never received the grievance until it was given to him by opposing counsel on November 21, 2006. Plaintiff's Exhibit N.

## B. The June 6, 2005, Grievance

Both Plaintiff and Defendants agree as to the following facts. On June 6, 2005, Plaintiff submitted a grievance regarding "Staff Conduct" and "Other: Counselor Services," in which he claimed that Colleen Franklin failed to perform her job adequately and requested that she complete her rounds twice a month. Defendants' Exhibit D. Plaintiff checked the box above his signature designating this grievance as an "EMERGENCY." *Id.*

On June 10, 2005, Chief Administrative Officer Dee Battaglia received this grievance. *Id.* On June 15, 2005, she checked the box "No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner." *Id.*

Plaintiff claims that on July 26, 2005, he was transferred from Stateville Correctional Center to Menard Correctional Center and did not receive the grievance with Chief Administrative Officer Battaglia's response until late August 2005, which prevented him from exhausting his administrative remedies. Plaintiff's Exhibit N.

## C. The June 26, 2005, Grievance

On June 26, 2005, Plaintiff submitted a grievance to his counselor regarding "Staff Conduct" and "Other: Abuse of Authority, Excessive Force, Intimidation and Threats, and Agg. Assault and Battery," in which he claimed that Lt. Franklin threatened him with bodily harm and that Lt. Buchanan physically assaulted him. Defendants' Exhibit E. Plaintiff checked the box above his signature designating this grievance as an "EMERGENCY." *Id.*

On July 6, 2005, Chief Administrative Officer Dee Battaglia received this grievance. *Id.* On July 6, 2005, she checked the box "No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner." *Id.*

Plaintiff claims that on July 26, 2005, he was transferred from Stateville Correctional Center to Menard Correctional Center and did not receive the grievance until late August 2005, which prevented him from exhausting his administrative remedies. Plaintiff's Exhibit N.

## LEGAL STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

3

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©; *see also Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (*citing First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324.

## DISCUSSION

Exhaustion of administrative remedies, pursuant to the Prison Litigation Reform Act ("PLRA"), is required for all prisoner suits seeking redress for prison circumstances or occurrences, regardless of whether they involve general circumstances of incarceration or particular episodes, and whether they allege Eighth Amendment violations based on use of excessive force or some other

4

wrong. *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006); *Porter v. Nussle*, 534 U.S. 516 (2002). Under 42 U.S.C. § 1997e(a), the Court is directed to dismiss a suit brought with respect to prison conditions if the Court determines that Plaintiff has failed to exhaust his administrative remedies. *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999).

The Seventh Circuit addressed the issue of the procedures a prisoner must follow when using the administrative process in *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002), and stated:

> [U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred. Any other approach would allow a prisoner to 'exhaust' state remedies by spurning them, which would defeat the statutory objective of requiring the prisoner to give the prison administration an opportunity to fix the problem--or to reduce the damages and perhaps to shed light on factual disputes that may arise in litigation even if the prison's solution does not fully satisfy the prisoner.

The internal administrative grievance system of the Illinois Department of Corrections is set out in the Illinois Administrative Code (20 Ill. Admin. Code § 504.810). Inmates must follow these procedures: (1) The inmate must first attempt to resolve the situation through his counselor; (2) If the situation remains unresolved, he may file a written grievance within 60 days after the discovery of the incident, occurrence, or problem which gives rise to the grievance. Upon completion of an investigation by the grievance officer, the conclusions, and, if necessary, recommendations, are forwarded to the Chief Administrative Officer; (3) If the inmate does not believe the situation is resolved, he may appeal to the Director of the Illinois Department of Corrections. The Administrative Review Board, as the Director's designee, reviews the appeal of the grievance and determines whether a hearing is necessary; (4) The Administrative Review Board forwards its decision and any recommendations to the Director or other designee, who makes a final

determination.

As to the May 20, 2005, grievance, neither party disputes that Grievance Officer Hawkins received it on May 31, 2005, and denied it on September 30, 2005, four months later. Plaintiff claims that he never received the denied grievance until Defendants' motion for summary judgment was served on him and therefore was effectively precluded from filing an appeal with the Administrative Review Board. Defendants argue that Plaintiff's only support for his claim is his self-serving affidavit, Plaintiff's Exhibit N. However, Defendants have offered no proof that this denied grievance was mailed to Plaintiff, who had been transferred to Menard Correctional Center. Although the Court agrees with Defendants that there is no set time in which prison officials are required to respond to inmate grievances, a two-month framework is strongly suggested in the Illinois Administrative Code at least in regard to a decision from the Chief Administrative Officer:

> The Chief Administrative Officer shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances. 20 Ill. Admin. Code § 504.830(d).

In *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002), the Court of Appeals held that an inmate's administrative remedies are deemed exhausted when prison officials fail to respond to his grievances, thus making the administrative remedies unavailable. The Court emphasized that it refused "to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.' *Goodman v. Carter*, No-2000 C 948, 2001 WL 755137, at *3 (N.D.Ill. July 2, 2001)."

In the instant case, Grievance Officer Hawkins responded to Plaintiff's grievance four months after she received it. Because Plaintiff had been transferred to another correctional center in the meantime, it is possible, as he asserts, that he never received a copy of this denied grievance until

the motion for summary judgment was served on him. Without the denied grievance, he could not have filed an appeal with the Administrative Review Board. The Court accordindingly finds that a material issue of fact as to whether plaintiff failed to exhaust his administrative remedies remains in regard to the May 20, 2005, grievance.

As to the June 6, 2005, neither party disputes that CAO Battaglia received the grievance on June 10, 2005, and determined it was not an emergency on June 15, 2005. However Plaintiff claims he did not receive the denied grievance until late August, after he had been transferred to Menard Correctional Center. Although it seems a little odd that the denied grievance was not delivered to Plaintiff shortly after CAO Battaglia denied it and while Plaintiff was still at Stateville, Defendants have offered no evidence that it was delivered to Plaintiff then and not in late August as he contends.

The Illinois Administrative Code specifically provides that an inmate must file a written grievance within 60 days after the discovery of the incident, occurrence, or problem which gives rise to the grievance. *See* 20 Ill. Admin. Code § 504.810(a). Because Plaintiff's grievance was determined not to be an emergency, he therefore had to file a grievance within 60 days of the incident through normal channels. August 6, 2005, appears to be 60 days after the date on which he claims Defendant Colleen Franklin was not performing her job satisfactorily. The Court accordingly finds that a material issue of fact exists as to when Plaintiff actually received the June 6, 2005, grievance.

As to the June 26, 2005, grievance, the same analysis holds, except that Plaintiff would have had to file his grievance through normal channels on or before August 23, 2005, 60 days after the alleged incidents. This date could be construed as "late August," which is when Plaintiff claims he received the denied grievance. As neither party has offered any evidence, such as a mail log or the like, as to when Plaintiff actually received this grievance, the Court finds that a genuine issue of fact

exists as to when Plaintiff actually received the June 26, 2005.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motion for summary judgment [22]. Plaintiff's motion in response to Defendants' Leave to File Motion for Summary Judgement [26] is construed to be Plaintiff's response to the motion for summary judgment and the clerk is directed to terminate it as a motion.

**SO ORDERED**   ENTERED: 7/28/07

*(signature)*

**HON. RONALD A. GUZMAN**
**United States District Judge**